[Cite as *State v. Edmonds*, 2018-Ohio-2832.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 17-CA-53 |
| | : | |
| BRANDON G. EDMONDS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Licking County Court of Common Pleas, Case No. 16 CR 00095



JUDGMENT:      AFFIRMED



DATE OF JUDGMENT ENTRY:      July 16, 2018



APPEARANCES:

For Plaintiff-Appellee:      For Defendant-Appellant:

WILLIAM C. HAYES      PETER GALYARDT
LICKING COUNTY PROSECUTOR      ASST. STATE PUBLIC DEFENDER
     250 East Broad St., Suite 1400
PAULA M. SAWYERS      Columbus, OH 43215
20 S. Second Street, 4th Floor
Newark, OH 43055

*Delaney, J.*

{¶1} Defendant-Appellant Brandon G. Edmonds appeals his conviction and sentence on June 19, 2017 by the Licking County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

{¶2} On February 12, 2016, Defendant-Appellant Brandon G. Edmonds and co-defendants went to the home of H.O. located in Newark, Ohio. Edmonds knocked on the door and when H.O. opened the door, Edmonds and the co-defendants rushed in. Edmonds brandished a gun at H.O. and other occupants of the house in an effort to steal drugs or money. A struggle ensued between H.O. and Edmonds, during which Edmonds fired his gun numerous times. H.O. was shot in the knee, causing serious physical harm. Edmonds and the co-defendants fled the home.

{¶3} A warrant was issued for Edmonds's arrest on February 16, 2016. He was arrested on March 11, 2016.

{¶4} On March 24, 2016, the Licking County Grand Jury indicted Edmonds on the following offenses:

Count 1: Aggravated Burglary, a felony of the first-degree in violation of R.C. 2911.11(A)(1) and/or (2)(B);

Count 2: Aggravated Robbery, a felony of the first-degree in violation of R.C. 2911.01(A)(1) and/or (3)(C);

Count 3: Felonious Assault, a felony of the second-degree in violation of R.C. 2903.11(A)(1) and/or (2)(D)(1)(a);

Count 4: Having Weapons While Under Disability, a felony of the third-degree in violation of R.C. 2923.13(A)(3)(B); and

Firearm Specifications as to Counts 1, 2, and 3, in violation of R.C. 2941.145(A).

{¶5}   Edmonds entered a plea of not guilty to all counts. Prior to trial, Edmonds waived his right to a jury trial on Count 4 and elected to have that count tried to the court. The matter proceeded to trial on June 12 through June 15, 2017.

{¶6}   During the trial, Detective Art Minton with the Newark Police Department testified. On direct examination, Det. Minton testified to the following:

Q. * * * At some point in time did you read or did you advise Mr. Edmonds

of his *Miranda*?

A. We did.

Q. Did you ask him questions after that?

A. I did.

Q. And what – what questions did you remember asking him?

A. Well the first thing I remember asking him was something to the effect of

do – do you remember the incident on Dickerson Street involving Cole,

James, and Marcus?

Q. And what was his response?

A. And his response was, "Pretty much." And then he added, "But I don't

know or I don't remember a James."

Q. Okay. Did he say anything else about the case?

A. Well, he – he kept – he was trying to interview me really to find out what

– what I knew or what I had been told. And I wouldn't give him any of that

information other than what the charges were against him were on the

warrant. And then he at some point asked us what kind of deal he would get if he talked about that and he asked us at some point about a lawyer and if he's ---

MS. MENASHE: Objection, Your Honor.

(T. 705-706).

{¶7}   Counsel for Edmonds objected to Det. Minton's testimony on the basis of a *Doyle* violation and requested a mistrial. (T. 706). The trial court excused the jury and the parties argued their positions. Counsel argued the State improperly elicited testimony that Edmonds invoked his right to counsel in violation of *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). (T. 708-709). Counsel argued:

So the clear implication of this is he asked for a lawyer and noth – and then he asked for – and I think where we were headed was, what Mr. Edmonds really said on the tape was if – if I get a lawyer can I come back and talk to you then. And obviously there's no evidence that he came back and talked to them then, so it's because the lawyer – in fact Detective Minton actually says to him, well they're not going to let you talk during – during the interview. * * * but clearly the – the inference to the jury now is that's it, he asked for a lawyer, they stop because he invoked his right to counsel * * *.

(T. 711-712).

{¶8}   The State responded:

Your Honor, the statement would not be sufficient for a suppression motion. The statement was, "If I got a lawyer, could I come back and talk to you

then?" The response was, "Your lawyer is not going to want you to talk to us. * * * It was not a clear invocation of the right to counsel. (T. 712).

{¶9}   The trial court inquired:

Yeah, but – but what's any of that – okay, even if it's not a clear invocation of his right to counsel, what's the probative value of anything he says up until that point? I don't * * * know what we're even talking about that. I don't know why the jury is even hearing about this portion of the interview if he's not going to make some statement eventually that triggers the right to counsel. I mean that's the problem. What – what other purpose did we hear that testimony for if it wasn't the suggestion that he lawyered up?

(T. 713). The State responded that the testimony was to show that Edmonds wanted to know what the co-defendants told Det. Minton. Edmonds wanted to know what they said so he knew what to say. (T. 714). The trial court stayed ruling on the oral motion for mistrial until he had reviewed Det. Minton's testimony, heard the recording of Det. Minton's interview of Edmonds, and conducted research on the issue. (T. 715).

{¶10} After the trial court reviewed the trial materials and heard further arguments from the parties, the trial court overruled the motion for mistrial. The judge stated:

The question is whether there is a *Doyle* violation. The jury heard Detective Minton say that I Mirandized him, he was aware of his rights, we talked, and at some point he mentioned something about a lawyer – and I'm paraphrasing. That is not a *Doyle* violation, in my view. It's improper, it's prejudicial. I will – I will sustain the objection and issue a instruction if the

Defense wants one. * * * *Doyle* has to do with confronting a Defendant while he's testifying with the fact that he remained silent after being advised of his *Miranda* warnings. He didn't remain silent here but that – that's really beside the point. The jury's only heard that he's asked about a lawyer; that's all they heard.

(T. 729-730).

{¶11} Edmonds was ultimately convicted on all counts. The trial court sentenced Edmonds to an aggregate sentence of eleven years.

## ASSIGNMENT OF ERROR

{¶12} Edmonds raises one Assignment of Error:

{¶13} "THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED DUE PROCESS WHEN IT DENIED BRANDON EDMONDS'S MISTRIAL REQUEST. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION. TR. 705-706, 711, 713, 719-720, 726, 729-730."

## ANALYSIS

{¶14} In his sole Assignment of Error, Edmonds argues the trial court erred by denying his motion for a mistrial after Det. Minton testified in the State's case-in-chief that Edmonds asked about a lawyer. We disagree.

{¶15} "Mistrials need to be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). The standard of review for evaluating a trial court's decision to grant or deny a mistrial is abuse of discretion. *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768

(1984). In reviewing a claim that a mistrial should have been granted, the Ohio Supreme Court has noted "[t]his court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." *State v. Shaffer*, 5th Dist. Richland No. 2003-CA-0108, 2004-Ohio-3717, ¶ 18 quoting [*State v.*] *Widner* [(1981), 68 Ohio St.2d 188, 429 N.E.2d 1065]. See, also, *Wade v. Hunter* (1949), *336 U.S. 684, 687, 69 S.Ct. 834, 836, 93 L.Ed. 974*. An abuse of discretion connotes more than an error of law or judgment. It implies that the trial court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶16} The right to remain silent is conferred by the United States and the Ohio Constitutions. The privilege against self-incrimination "is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.' " *State v. Graber*, 95 N.E.3d 631, 641 (5th Dist.2003) quoting *Miranda v. Arizona,* 384 U.S. at 460, 86 S.Ct. 1602, quoting *Malloy v. Hogan* (1964), 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653. The United States Supreme Court in *Miranda v. Arizona, supra* detailed the well-known procedural safeguards, including the right to an attorney, to protect the privilege against self-incrimination. "A suspect's right to an attorney during questioning * * * is derivative of his right to remain silent." *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2D 335, ¶ 13 quoting *Wainwright v. Greenfield*, 474 U.S. 284, 298-299, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (Rehnquist, J., concurring). In *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that use of a defendant's post-arrest, post-*Miranda*

silence for impeachment purposes violates the Due Process Clause of the Fourteenth Amendment. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 16. In *Wainwright v. Greenfield*, 474 U.S. 284, 298-299, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), the United States Supreme Court held the use of a defendant's post-arrest, post-*Miranda* silence as substantive evidence of guilt violated due process. The State may not use a defendant's silence to lead the jury to the conclusion that innocent people speak to the police to clear up misunderstandings, while guilty people consult with their attorneys. *State v. Abraham*, 9th Dist. Summit No. 26258, 2012-Ohio-4248, ¶ 42 citing *State v. Leach* at ¶ 32.

{¶17}   Det. Minton testified that after Edmonds was advised of his *Miranda* rights, Edmonds answered some of his questions. The State asked Det. Minton if Edmonds said anything about the case. The detective responded that he felt Edmonds was trying to interview him to see what he knew or had been told by the co-defendants. He next stated that Edmonds asked about a lawyer. The trial court ruled there was no *Doyle* violation when Det. Minton testified Edmonds asked about a lawyer during post-arrest, post-*Miranda* questioning.

{¶18} In *State v. Abraham*, 9th Dist. Summit No. 26258, 2012-Ohio-4248, the Ninth District Court of Appeals affirmed a decision to find no *Doyle* violation in a scenario where a defendant's pre-arrest, pre-*Miranda* silence was referred to in the State's case-in-chief. The detective in *Abraham* testified that during questioning, the defendant stated he did not know if he needed to talk to an attorney or he may want to talk to an attorney. *Id.* at ¶ 43. The State stopped the line of questioning and no more references were made regarding the defendant's attorney.

{¶19} The Ninth District found no *Doyle* violation as to the detective's reference to the defendant's question about an attorney. The court differentiated its case from *State v. Leach, supra*, wherein the Ohio Supreme Court considered whether a *Doyle* violation occurred when the State remarked on the defendant's silence during opening statement, repeatedly asked about his silence during direct examination, and introduced the *Miranda* rights form he later signed into evidence. *Id.* The Ohio Supreme Court was asked to decide whether a defendant's pre-arrest, pre-*Miranda* silence may be used as substantive evidence of guilt in the State's case-in-chief and whether a defendant's post-arrest, post-*Miranda* assertion of his right to counsel may be used as substantive evidence of guilt in the State's case-in-chief. *Id.* at ¶ 1. The Court held the State violated the defendant's privilege against self-incrimination both pre-arrest, pre-*Miranda* and post-arrest, post-*Miranda* by using it against him during the trial, subverting the policies behind the Fifth Amendment. *Id.*

{¶20} The Ninth District found the testimony in *Abraham* to be distinct from *Leach* because the State in *Abraham* never affirmatively sought to use the defendant's silence as evidence. *Abraham* at ¶ 45. The detective's reference was "brief and isolated," the reference was vague, and there was no evidence the State sought to elicit the response the detective gave. *Id.* citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, at ¶ 162.

{¶21} In this case, we find that while the defendant's silence in *Abraham* was pre-arrest and pre-*Miranda*, the facts are similar to the present case where the issue was raised post-arrest and post-*Miranda*. First, there is no evidence in this case that the State sought to elicit the detective's response. The State asked the detective, "Did he say

anything else about the case?" The detective responded to the question explaining he felt Edmonds wanted to know what the detective knew about the case and at the end of his explanation, he stated Edmonds asked about a lawyer. The statement was vague in that the detective stated Edmonds asked "about a lawyer," not "for a lawyer" or "for his lawyer." In *Leach*, the defendant stated "he wished to consult an attorney." *Leach, supra* at ¶ 16. Second, Det. Minton's statement was brief and isolated. There was no further reference during the State's case-in-chief about Edmonds's attorney.

{¶22} Third, there is no evidence the State affirmatively sought to use Edmonds's question about a lawyer as substantive evidence of Edmonds's guilt; nor did the State use the evidence for impeachment purposes. The Ninth District stated, "[t]he thrust of *Leach* and its progeny is that the State may not use a defendant's unwillingness to talk to the police to infer his guilt." *Abraham* at ¶ 45 citing *Powell*, *supra* at ¶ 155-156. Det. Minton's testimony does not show Edmonds invoked his right to remain silent or was unwilling to talk to the police. Det. Minton made no comment on Edmonds's silence.

{¶23} In this case, we find no abuse of discretion when the trial court did not find the State elicited a *Doyle* violation necessitating a mistrial. A mistrial is required when the ends of justice so require and a fair trial is no longer possible. Det. Minton's reference to Edmonds's question about an attorney did not rise to that level.

{¶24} Edmonds's sole Assignment of Error is overruled.

## CONCLUSION

{¶25} The judgment of the Licking County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

E. Wise, J., concur.